**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Samhita Gera, | No. CV-23-02164-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Chamath Palihapitiya, et al., | |
| Defendants. | |

Plaintiff Samhita Gera owns common stock in Nominal Defendant Opendoor Technologies Inc. She brings this derivative suit under § 14(a) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 14a-9. Her claim arises out of Social Capital Hedosophia Holdings Corp. II's de-SPAC merger with Opendoor Labs Inc.

Before the Court are Defendants' Motions to Dismiss (Docs. 11, 13).[1] Additionally, the parties request that the Court consider certain exhibits in its analysis of the Motions. (Docs. 14, 17.) The matter is fully briefed, and the Court heard oral argument on June 24, 2024. (Docs. 11, 13, 14, 15, 16, 17, 18, 22, 23, 24.) For the following reasons, the Court will take judicial notice of Opendoor's certificate of incorporation, grant the Motions to Dismiss, and dismiss the Complaint with leave to amend.

. . .

. . .

---

[1] Defendants are Chamath Palihapitiya, Steven Trieu, Ian Osborne, David Spillane, Adam Bain, Eric Wu, Carrie Wheeler, Cipora Herman, Pueo Keffer, Glenn Solomon, Jason Kilar, Jonathan Jaffe, John Rice (together, the "Individual Defendants"), SCH Sponsor II LLC, and Nominal Defendant Opendoor Technologies Inc.

## I.     BACKGROUND

### A.     Social Capital Hedosophia Holdings Corp. II and the Proposed Merger

For investors wishing to take a private company public, one option is a de-SPAC merger. This occurs when a "SPAC," or Special Purpose Acquisition Company, merges with a privately held business. (*See* Doc. 1 ¶ 3.) A SPAC is "a publicly traded corporation with a two-year life span formed with the sole purpose of effecting" such a merger. (*Id.*)

Social Capital Hedosophia Holdings Corp. II ("SCH"), which eventually merged with Opendoor Labs Inc. ("Legacy Opendoor"), was a SPAC. (*Id.* ¶ 108.) Its stated goal was to merge with a company "in the technology industries." (*Id.* ¶ 112.) It was managed by Defendant SCH Sponsor II LLC ("Sponsor"). (*Id.* ¶ 108.)

Sponsor was also SCH's most significant investor. (*Id.* ¶ 111.) Prior to SCH's initial public offering ("IPO"), Sponsor purchased 8,625,000 founder shares of SCH for an aggregate price of $25,000, or around $0.003 per share. (*Id.* ¶ 113.) It later transferred 100,000 founder shares to Defendants Cipora Herman and David Spillane each. (*Id.* ¶ 113.)

SCH held its IPO on April 30, 2020. (*Id.* ¶ 115.) It sold 41,400,000 common shares with redemption and liquidation rights for $10.00 per share. (*Id.*) If SCH did not complete a merger within 24 months of incorporation, it would liquidate. (*Id.*) In that event, public shareholders would receive $10.00 per share, plus interest. (*Id.*) If SCH did complete a merger, "public shareholders had the option to redeem their shares for $10.00 per share plus interest" or accept shares in Opendoor. (*Id.* ¶¶ 115, 202.)

During the IPO, Sponsor deepened its investment in SCH by purchasing 6,133,333 private placement warrants for $9,200,000, or $1.50 per unit. (*Id.* ¶ 116.) The warrants "entitled the holder to purchase a share of SCH Class A common stock. After the merger, the warrant holder was entitled to purchase one common share of Opendoor common stock." (*Id.* (cleaned up).) But unlike the common stock, the warrants did not enjoy any liquidation or redemption rights. (*Id.*)

Following the IPO, SCH needed to find a merger partner, or Sponsor's significant investments "would [be] rendered worthless." (*Id.* ¶ 118.) On May 13, 2020, Defendant

1   Adam Bain learned from a member of SCH's board of directors that Defendant Eric Wu,
2   co-founder of Legacy Opendoor, might be interested in a de-SPAC merger. (*Id.* ¶¶ 120,
3   123.) After discussions, SCH and Legacy Opendoor agreed to merger terms, including a $5
4   billion valuation of Legacy Opendoor. (*Id.* ¶¶ 124-40.) SCH did not obtain a fairness
5   opinion, any independent valuation, or any advice from independent counsel prior to
6   agreeing to the terms. (*Id.* ¶ 133.)

7   **B.   The Merger Proxy Statement**

8   The proposed merger required shareholder approval. (*See id.* ¶¶ 186-87.) Opendoor
9   Technologies Inc. ("Opendoor"), the planned post-merger entity, filed a merger proxy
10  statement with the United States Securities and Exchange Commission on November 30,
11  2020. (*Id.* ¶¶ 14, 186.) The statement requested that shareholders approve the merger, elect
12  Defendants Wu, Pueo Keffer, Glenn Solomon, Jason Kilar, Jonathan Jaffe, and Herman to
13  Opendoor's board of directors, and approve an incentive-based compensation plan (the
14  "2020 Plan"). (*Id.* ¶ 187.)

15  The 2020 Plan "allowed for approximately 43.5 million shares of post-merger
16  company stock to be available for issuance as compensation to the company's officers and
17  directors, including various of the Individual Defendants." (*Id.* ¶ 188 (cleaned up).)
18  Opendoor has paid over $659 million in awards to its officers and directors since the
19  shareholder approval of the 2020 Plan. (*Id.* ¶ 189.) This included $749,753 to Defendant
20  John Rice; $50,060,723 to Defendant Carrie Wheeler; $481,649,551 to Defendant Wu;
21  $448,885 to Defendant Bain; $802,847 to Defendant Herman; $370,608 to Defendant
22  Jaffe; $440,116 to Defendant Keffer; $440,116 to Defendant Kilar; and $445,904 to
23  Defendant Solomon. (*Id.*)

24  Plaintiff alleges that the merger proxy statement contained several false and
25  misleading statements and omissions which led shareholders to approve the merger, 2020
26  Plan, and related proposals. (*Id.* ¶¶ 190-202.) Namely, Plaintiff alleges that it falsely and
27  misleadingly (1) failed to disclose Legacy Opendoor's technological inadequacies and
28  "fraudulent consumer practices," (2) misrepresented due diligence efforts in investigating

Legacy Opendoor prior to proposing the merger, (3) misrepresented the value of SCH shares prior to the merger, and (4) failed to disclose the SCH board of directors' financial ties to the founder shares. (*Id.*)

## C.    The 2021 Proxy Statement

Opendoor filed a post-merger proxy statement on April 30, 2021. (*Id.* ¶ 213.) This proxy statement called for shareholders to elect Defendants Herman, Jaffe, and Solomon to Opendoor's board of directors, ratify Deloitte & Touche LLP as Opendoor's independent auditor for the 2021 fiscal year, and hold an advisory vote on executive compensation. (*Id.* ¶ 214.) Shareholders voted in favor of all the proposals. (*Id.* ¶ 219.) Plaintiff alleges that the 2021 proxy statement misled investors by failing to disclose the following material information: (1) Opendoor's technological inadequacies and risk of unprofitability, (2) SCH's and Legacy Opendoor's misconduct in bringing about the merger, (3) Legacy Opendoor and Opendoor's "fraudulent business practices," (4) Opendoor's failure to follow its own code of conduct, and (5) the Individual Defendants' disregard of their role in risk oversight. (*Id.* ¶¶ 217-18.)

## D.    The 2022 Proxy Statement

Opendoor's next proxy statement came on April 8, 2022. (*Id.* ¶ 231.) It requested that shareholders elect Defendants Bain and Keffer to the board, again ratify Deloitte & Touche LLP as Opendoor's independent auditor for the 2022 fiscal year, and hold another advisory vote on executive compensation. (*Id.* ¶ 232.) Shareholders again approved all the proposals. (*Id.* ¶ 237.) Plaintiff alleges that the 2022 proxy statement was false and misleading in that it failed to disclose much of the same information as the 2021 proxy statement. (*Compare id.* ¶¶ 217-18 *with id.* ¶¶ 235-36.)

## E.    Plaintiff's Claim

Plaintiff alleges that the shareholders approved the merger, 2020 Plan, and other proposals because of materially misleading statements and omissions in the proxy statements, and that Opendoor has suffered and will continue to suffer harm as a result. (*Id.* ¶¶ 201, 219, 237, 249-55.) She says that Opendoor, "as a direct and proximate result

of the [] Individual Defendants' conduct, . . . will lose and expend many millions of dollars." (*Id.* ¶ 248.) Among those losses, Plaintiff includes overpayment made in the merger, compensation paid to Defendants, legal fees, costs, "and any payments for resolution of or to satisfy a judgment associated with" related Opendoor cases, Opendoor's settlement with the Federal Trade Commission, the costs of any internal investigations, and the loss of corporate reputation and goodwill. (*Id.* ¶¶ 249-55.)

To remedy these perceived harms, Plaintiff brings this action "derivatively and for the benefit of Opendoor." (*Id.* ¶ 256.) She alleges one claim: violation of § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n, Pub. L. No. 117-263, 136 Stat. 3426, and Securities and Exchange Commission Rule 14a-9, 17 C.F.R. § 240.14a-9. (*Id.* ¶¶ 283-95.) She did not make a demand on Opendoor's board of directors before filing this lawsuit. (*See generally* Doc. 1; *see also* Doc. 15.)

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(1) and (6), Fed. R. Civ. P. (Docs. 11, 13.) Plaintiff opposes the Motions. (Docs. 15, 16.)

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1), Fed. R. Civ. P.

Rule 12(b)(1) authorizes a court to dismiss claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A challenge under that rule may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). When a defendant argues that the claims in the complaint, even if true, are insufficient to establish subject matter jurisdiction, the challenge is a facial one. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial challenge to subject matter jurisdiction under Rule 12(b)(1), courts must accept all material allegations in the complaint as true and construe the complaint in favor of the plaintiff. *White*, 227 F.3d at 1242; *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). "By contrast, in a factual attack [to subject matter jurisdiction], the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. Courts may look beyond the

complaint only when a defendant brings a factual attack against jurisdiction. *White*, 227 F.3d at 1242. In that instance, the court "also need not presume the truthfulness of the plaintiffs' allegations." *Id.* Here, Defendants' challenge is facial because they argue that the Court lacks subject matter jurisdiction irrespective of the truth of Plaintiff's allegations. (*See generally* Doc. 11.)

### B.    Rule 12(b)(6), Fed. R. Civ. P.

A complaint may also be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Id.* At the pleading stage, the Court's duty is to accept all well-pleaded complaint allegations as true. *Id.* Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). "[D]ismissal . . . is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks omitted).

Here, Plaintiff's claim is subject to heightened pleading standards under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 77z-1, *et seq*, Pub. L. 105-353, 112 Stat. 3230, 3235. *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 682 (9th Cir. 2005) ("[T]he PSLRA pleading requirements apply to claims brought under Section 14(a) and Rule 14a-9."). This means that Plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). The PSLRA "prevents a plaintiff from skirting dismissal by filing

a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (emphasis in original).

Because the PSLRA requires a plaintiff to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading," courts in this Circuit have held that unwieldy complaints that do not easily provide a one-to-one connection between misleading statements and the reasons why the statements are misleading violate Rule 8(a), Fed. R. Civ. P., by not setting forth a "short and plain" statement of the claims and the PSLRA. *See, e.g.*, *United Ass'n Nat'l Pension Fund v. Carvana Co.*, No. CV-22-02126-PHX-MTL, 2024 WL 863709, *10-11 (D. Ariz. Feb. 29, 2024); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1075 (N.D. Cal. 2001); *Primo v. Pac. Biosciences of Cal.*, 940 F. Supp. 2d 1105, 1111-12 (N.D. Cal. 2013); *Patel v. Parnes*, 253 F.R.D. 531, 551-54 (C.D. Cal. 2008). These kinds of complaints are commonly referred to as puzzle pleadings because, like loose pieces of a jigsaw puzzle, the reader must actively put together random allegations of misleading statements and other elements to form the basis of a claim. They result in dismissal. *See, e.g.*, *United Ass'n Nat'l Pension Fund*, 2024 WL 863709, at *10-12.

## III.  DISCUSSION

Section 14(a) and Rule 14a-9 provide relief to those harmed by corporate dishonesty. *See* 15 U.S.C. § 78n; 17 C.F.R. § 240.14a-9. Section 14(a) prohibits violation of "such rules and regulations as the [Securities and Exchange] Commission may proscribe . . . ." 15 U.S.C. § 78n. Rule 14a-9 "disallows the solicitation of a proxy by a statement that contains either a false or misleading declaration of material fact, or an omission of material fact that makes any portion of the statement misleading." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000) (cleaned up); *see also* 17 C.F.R. § 240.14a-9. To state a claim under § 14(a) and Rule 14a-9, a plaintiff must also "demonstrate that the misstatement or omission was made with the requisite level of

culpability and that it was an essential link in the accomplishment of the proposed transaction." *Desaigoudar*, 223 F.3d at 1022.

Defendants move the Court to dismiss Plaintiff's § 14(a) and Rule 14a-9 claim on several theories, including Plaintiff does not have standing to pursue her claim, her claim is time-barred, she has failed to allege demand futility, and she has engaged in impermissible puzzle pleading. The Court addresses each argument in turn.

### A.     Standing

The text of the Securities Exchange Act of 1934 does not expressly provide a private right of action for § 14(a) direct or derivative claims. *See* 15 U.S.C. § 78a, *et seq.* Thus, for Plaintiff to bring her derivative claim, the Act must imply a private right of action. According to Defendants, it does not. (Doc. 11 at 12-14; Doc. 22 at 6-9.)

The Supreme Court of the United States confronted this question in *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964). There, a stockholder plaintiff sued under § 14(a) and argued that a company merger would not have occurred absent the defendants' "circulation of a false and misleading proxy statement." *Id.* at 427. The Supreme Court considered whether § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, Pub. L. 111-203, 124 Stat. 1853, 1865, implicitly authorizes a federal cause of action for alleged violations of § 14(a).[2] *Borak*, 377 U.S. at 428. It answered affirmatively, concluding "that a right of action exists as to both derivative and direct causes." *Id.* at 431.

Defendants urge the Court to disregard *Borak* in light of the Ninth Circuit's recent decision in *Lee v. Fisher*, 70 F.4th 1129 (9th Cir. 2023) (en banc). There, the plaintiff brought a derivative claim, also alleging a violation of § 14(a) and Rule 14a-9. *Id.* at 1135. The defendant's bylaws contained a forum-selection clause, requiring that all derivative actions be brought in the Delaware Court of Chancery. *Id.* The plaintiff nevertheless brought the action in a California district court. *Id.* After the complaint was dismissed on forum non conveniens grounds, the plaintiff argued on appeal that the forum selection clause was unenforceable because it violated "the federal forum's strong public policy of

---

[2] Section 27 concerns the federal courts' "exclusive jurisdiction of violations of" Chapter 2B of Title 15 of the United States Code. 15 U.S.C. § 78aa(a).

allowing a shareholder to bring a § 14(a) derivative action." *Id.* at 1135, 1143. As evidence of the purported strong public policy, the plaintiff relied heavily upon *Borak*'s recognition of an implied private right of action. *Id.* at 1144.

The Ninth Circuit's en banc majority rejected the plaintiff's argument that *Borak* established such a strong public policy. In doing so, it cast doubt on *Borak*'s reasoning. The court described *Borak* as "not well-explained or well-reasoned," and "further undermine[d]" by recent jurisprudential developments. *Id.* at 1146-49. It also categorized *Borak*'s recognition of a private right of action for § 14(a) derivative claims as "dicta." *Id.* at 1146.

Despite the court's critique of *Borak*, it did not hold that there is no private right of action for § 14(a) derivative claims. To the contrary, responding to the dissenting opinion, the court expressly limited its holding to whether the defendant's forum selection clause was enforceable:

> In stating that "[t]he majority goes to great lengths to assert that *Borak* is no longer good law," . . . the dissent appears to have overlooked our entire analysis. We acknowledge that the Supreme Court has not "question[ed] the holding" of *Borak* . . . Rather, we explain that the Supreme Court's subsequent decisions have called into question *Borak*'s dicta that a shareholder has a right to bring a derivative § 14(a) action, which supports our conclusion that there is no strong public policy in favor of such actions.

*Id.* at 1149 n.16.

Defendants' reading of *Lee* thus stretches too far. The Ninth Circuit did not reject binding precedent from the Supreme Court in that case. It could not decline to follow *Borak* because only the Supreme Court can overrule its own decisions. The same holds true for this Court. Thus, Defendants' Motion to Dismiss based on standing will be denied.

## B.    Statute of Limitations

"[T]he statute of limitations for claims brought under Section 14(a) is one year from the discovery of the occurrences giving rise to the claim, but no later than three years from the date of the violation." *Klein v. Cook*, No. 14-CV-03634-EJD, 2023 WL 3726500, at *4 (N.D. Cal. May 30, 2023). The clock begins to run "not only once a plaintiff actually

discovers the facts, but also when a hypothetical reasonably diligent plaintiff would have discovered them." *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 646-47 (2010) (emphasis removed). A fact is "discovered" when a "reasonably diligent plaintiff . . . can plead that fact with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss." *York Cnty. ex rel. Cnty. of York Ret. Fund v. HP, Inc.*, 65 F.4th 459, 465 (9th Cir. 2023) (internal quotation marks and citation removed).

The parties dispute when the statute of limitations began running. According to Defendants, it did so on October 7, 2022—the date that *In re Opendoor Technologies Inc. Securities Litigation*, No. 2:22-CV-1717-PHX-MTL ("*In re Opendoor*"), was filed.[3] (Doc. 13 at 13.) Plaintiff disagrees, arguing that the correct date is no earlier than November 3, 2022, as that is when "the truth . . . emerge[d]." (Doc. 16 at 14-15.) Additionally, she contends that the Court should not consider whether her claim is time-barred at this early stage. (*Id.* at 13-14.)

Plaintiff is correct that this issue is ordinarily reserved for summary judgment. *See, e.g.*, *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) ("When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled."). Indeed, "[i]n order for a statute of limitations bar to be raised at the pleadings stage, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred." *Johnson v. Altamirano*, 418 F. Supp. 3d 530, 560 (S.D. Cal. 2019) (internal quotation marks and citation removed).

The Court finds that it is not "clearly and affirmatively" evident from the face of the Complaint that Plaintiff's claim is time-barred. *Id.* While Defendants have identified areas of overlap between Plaintiff's claim and those presented by the plaintiffs in *In re Opendoor*, that alone cannot justify dismissal at this early stage. This is particularly true because the Complaint also includes many allegations beyond those at issue in *In re*

---

[3] *In re Opendoor* is a separate securities case pending before this Court.

1    *Opendoor*—namely, that certain Defendants were financially motivated to push SCH's
2    merger with Legacy Opendoor at the shareholders' expense and that they failed to exercise
3    due diligence in recommending the merger despite suggesting otherwise to the
4    shareholders. (*See, e.g.*, ¶¶ 3, 10, 12, 36, 47, 118, 138, 193-198, 276, 287.)

5           The Court will not dismiss Plaintiff's claim as time-barred at this juncture.

6           **C.    Demand Futility**

7           Opendoor is incorporated in Delaware, and therefore, Delaware law determines
8    whether Plaintiff has successfully alleged demand futility. *Rosebloom v. Pyott*, 765 F.3d
9    1137, 1148 (9th Cir. 2014) ("The substantive law which determines whether demand is, in
10   fact, futile is provided by the state of incorporation of the entity on whose behalf the
11   plaintiff is seeking relief.") (cleaned up).

12          "'A cardinal precept' of Delaware law is 'that directors, rather than shareholders,
13   manage the business and affairs of the corporation.'" *United Food & Com. Workers*
14   *Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d
15   1034, 1047 (Del. 2021) (hereinafter, "*Zuckerberg*") (quoting *Aronson v. Lewis*, 473 A.2d
16   805 (Del. 1984)). In a derivative suit such as this, "a stockholder seeks to displace the
17   board's decision-making authority over a litigation asset and assert the corporation's
18   claim." *Id.* (cleaned up). In such a way, derivative actions "'by [their] very
19   nature' . . . encroach 'on the managerial freedom of directors' by seeking to deprive the
20   board of control over a corporation's litigation asset.'" *Id.* (quoting *Aronson*, 473 A.2d at
21   811) (cleaned up).

22          Reflecting this well-established policy, Delaware law requires that "for a
23   stockholder to divest the directors of their authority to control the litigation asset and bring
24   a derivative action on behalf of the corporation, the stockholder must (1) make a demand
25   on the company's board of directors or (2) show that demand would be futile." *Id.* (internal
26   quotation marks and citation removed). This "is a substantive requirement that ensures that
27   a stockholder exhausts his intracorporate remedies, provides a safeguard against strike
28   suits, and assures that the stockholder affords the corporation the opportunity to address an

alleged wrong without litigation and to control any litigation which does occur." *Id.* (cleaned up).

When evaluating such allegations under Delaware law, the Court must "ask the following three questions on a director-by-director basis":

> (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;
>
> (ii) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and
>
> (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.
>
> If the answer to any of the questions is "yes" for at least half of the members of the demand board, then demand is excused as futile.

*Zuckerberg*, 262 A.3d at 1059.

Rule 23.1, Fed. R. Civ. P., which applies to derivative actions, sets pleading standards for plaintiffs alleging demand futility and specifies that they must do so "with particularity." *See Towers v. Iger*, 912 F.3d 523, 528-29 (9th Cir. 2018).

Because Plaintiff did not make a pre-suit demand on the board, her suit may proceed only if she has alleged with particularity that demand would have been futile as to a majority—in this case, five—of Opendoor's board of directors at the time that the suit was filed. *See Zuckerberg*, 262 A.3d at 1046 (defining the relevant board for demand futility purposes as the board at the time the suit was filed). This is a "difficult feat." *Ryan v. Gifford*, 918 A.2d 341, 352 n.23 (Del. Ch. 2007).

### 1.     Material Personal Benefit

Defendants first argue that Plaintiff has failed to allege that any of the Director Defendants "received a material personal benefit from the alleged misconduct that is the subject of the litigation demand."[4] *See Zuckerberg*, 262 A.3d at 1059. Plaintiff disagrees,

---

[4] The Director Defendants are the Individual Defendants who were part of Opendoor's board of directors at the time that the suit was filed. These are Defendants Wu, Wheeler,

1    pointing to the 2020 Plan and Defendant Herman's founder shares.[5]

2                            **i.      The 2020 Plan**

3           According to Defendants, Plaintiff's focus on the 2020 Plan is misplaced. They

4    contend that, under Delaware law, an incentive-based compensation plan which merely

5    makes individuals eligible for future stock awards cannot be a material personal benefit.

6    Applying this rule, Defendants conclude that the 2020 Plan—which does not itself award

7    stock—does not constitute a material personal benefit.

8           Defendants rely on several cases to support their interpretation of Delaware law. For

9    example, one court applying Delaware law recently found that an incentive plan did not

10   constitute a material personal benefit in part because it only "provided directors with

11   'access to awards' without a guarantee or a specific amount in mind." *In re Faraday Future*

12   *Intelligent Elec. Inc. Derivative Litig.*, No. 2:22-CV-01570-CAS-JCx, 2024 WL 404495,

13   at *10 (C.D. Cal. Jan. 22, 2024). Another noted that "awarding stock options and increasing

14   the amount of stock options potentially available in the future are two qualitatively different

15   things." *Davis v. Baier*, No. 3:20-CV-0929, 2024 WL 252054, at *7 (M.D. Tenn. Jan. 22,

16   2024). Similarly, one Delaware district court observed that "the case authority does not

17   suggest that a defendant director's eligibility to participate in a compensation plan alone

18   excuses demand . . ." *In re Caterpillar Inc. Derivative Litig.*, C.A. No. 12-1076-LPS-CJB,

19   2014 WL 2587479, at *9 (D. Del. June 10, 2014); *see also N.J. Bldg. Laborers Pension*

20   *Fund v. Ball*, C.A. No. 11-1153-LPS-SRF, 2014 WL 1018210, at *4 (D. Del. Mar.

21   13, 2014) (holding that "the director defendants' eligibility to receive compensation under

22   the 2011 plan is insufficient to establish that a majority of the board was interested in the

23   disputed transaction" (cleaned up)).

24          Plaintiff concedes that the 2020 Plan did not award stock but maintains that it

25   conferred a material personal benefit. She emphasizes the value of the stock awards

26   _____

27   Keffer, Solomon, Kilar, Jaffe, Herman, Bain, and Rice. (Doc. 1 ¶ 260.)
     [5] Plaintiff also references awards "not only linked to the [2020 Plan], but to the close of the

28   merger directly." (Doc. 15 at 19 (cleaned up).) Regardless of whether certain awards
     enabled by the 2020 Plan were linked to the merger, the issue remains whether the 2020
     Plan constitutes a material personal benefit under Delaware law.

eventually granted to the Director Defendants (without directly challenging those awards), attempts to distinguish Defendants' cases in her overlength footnotes, and makes passing reference to *In re Ebix, Inc. Stockholder Litigation*, C.A. No. 8526-VCN, 2014 WL 3696655 (Del. Ch. July 24, 2014) (hereinafter "*In re Ebix*").[6] She argues that *In re Ebix* dooms Defendants' argument because, there, a Delaware court found demand excused "[i]n similar circumstances."[7] (Doc. 15 at 20.)

Defendants more accurately characterize Delaware law. As many courts have suggested, an incentive-based compensation plan must do more than merely enable future stock awards to constitute a material personal benefit. *See, e.g.*, *Davis*, 2024 WL 252054, at *7; *In re Faraday Future Intelligent Elec. Inc. Derivative Litig.*, 2024 WL 404495, at *10; *In re Caterpillar Inc. Derivative Litig.*, 2014 WL 2587479, at *9; *N.J. Bldg. Laborers Pension Fund*, 2014 WL 1018210, at *4. As those decisions recognize, eligibility for future awards does not guarantee an award, and thus provides no certain benefit. The incentive-based compensation plan merely creates the possibility of the receipt of a material personal benefit at some later time.

*In re Ebix* does not persuade the Court of Plaintiff's position. First, the plaintiff there challenged both the defendant's compensation plan and the awards made under that compensation plan. *See In re Ebix*, 2014 WL 3696655, at *17 (noting that the plaintiff directly challenged the compensation awards by alleging that the director defendants' acceptance of them constituted a breach of fiduciary duty), *22 (discussing the "challenged compensation awards" in the demand futility analysis). The plaintiff thus challenged the receipt of a benefit as a breach of fiduciary duty, not just the possibility of a benefit in the

---

[6] Plaintiff also briefly references *In re Saba Software, Inc. Shareholder Litigation*, C.A. No. 10697-VCS, 2017 WL 1201108, at *22 (Del. Ch. Mar. 31, 2017) and *Byrne v. Lord*, Nos. Civ.A. 14040, Civ.A. 14125, 1995 WL 684868, at *4 (Del. Ch. Nov. 9, 1995). But they do not support her position. Neither case involved a challenge to a compensation plan under § 14(a). Further, in *In re Saba Software, Inc. Shareholder Litigation*, the plaintiff directly challenged compensation awards—not the mere possibility of future awards—as a breach of fiduciary duty. 2017 WL 1201108, at *1, *6-7. Similarly, in *Byrne*, the plaintiffs challenged a self-dealing option plan which guaranteed the defendants the right to purchase a predetermined number of shares at an advantageous price. 1995 WL 684868, at *1-4.
[7] Despite cursory treatment of *In re Ebix* in her papers, Plaintiff described it at oral argument as "very much the reason why this case should move forward." (Doc. 26 at 73:10-11.)

future. Plaintiff here does not do the same. Second, and to the extent that *In re Ebix* can be read to suggest that mere eligibility for future stock awards constitutes a material personal benefit, the Court finds that conclusion unpersuasive and in direct conflict with other decisions applying Delaware law.

Finally, even if the 2020 Plan constituted a benefit, Plaintiff would still have to allege that the benefit was material to each Director Defendant that received it. *See In re Faraday Future Intelligent Elec. Inc. Derivative Litig.*, 2024 WL 404495, at *10 (rejecting "the apparent proposition that stock option grants are per se material benefits" (cleaned up)). She attempts to do so by emphasizing the size of the stock awards eventually awarded to the Director Defendants. But that, on its own, is insufficient as "materiality is [generally] assessed based upon the individual director's economic circumstances," or personal wealth. *Freedman v. Adams*, C.A. No. 4199-VCN, 2012 WL 1345638, at *6 (Del. Ch. Mar. 30, 2012). At most, Plaintiff would have alleged materiality as to Defendants Wu and Wheeler because they received stock awards valued at over $50 million. *Grabski ex rel. Coinbase Global, Inc. v. Andreessen*, C.A. No. 2023 0464 KSJM, 2024 WL 390890, at *7 (Del. Ch. Feb. 1, 2024) (describing $50 million as "presumptively material").

The Court finds that because the 2020 Plan only makes the Director Defendants eligible for future stock awards, it does not constitute a material personal benefit under Delaware law. Plaintiff has not alleged demand futility as to any director on this basis.

### ii.     Defendant Herman's Founder Shares

While the Complaint is ambiguous on this point, Plaintiff appears to allege that Defendant Herman purchased 100,000 founder shares from Sponsor at $0.003 per share for a total of $300. (*See* Doc. 1 ¶ 197.) Even if the realization of this investment constitutes a benefit, Plaintiff fails to allege particular facts regarding Defendant Herman's personal wealth. As a result, the Court cannot infer that any ostensible benefit was material. *See Freedman*, 2012 WL 1345638, at *6; *In re Faraday Future Intelligent Elec. Inc. Derivative Litig.*, 2024 WL 404495, at *10.

. . .

1

2.      **Substantial Likelihood of Liability**

2        According to Defendants, Plaintiff has failed to allege that any of the Director

3    Defendants "face[] a substantial likelihood of liability on any of the claims that would be

4    the subject of the litigation demand." *Zuckerberg*, 262 A.3d at 1059. They emphasize that

5    Opendoor's certificate of incorporation "includes an exculpatory provision that eliminates

6    a director's liability 'for any breach of fiduciary duty as a director, except to the extent

7    such exemption from liability or limitation thereof is not permitted under the [Delaware

8    General Corporation Law].'"[8] (Doc. 11 at 17 (quoting Doc. 12-8 at 3-4).) The Delaware

9    General Corporation Law permits corporations to "eliminat[e] or limit[] the personal

10   liability of a director or officer to the corporation or its stockholders for monetary damages

11   for breach of fiduciary duty as a director or officer," excluding liability for a "breach of the

12   director's or officer's duty of loyalty" or "acts or omissions not in good faith or which

13   involve intentional misconduct or a knowing violation of law." Del. Code Ann. tit.

14   8, § 102(b)(7) (2024). Defendants contend that Plaintiff does not allege any non-exculpated

15   conduct.

16       Plaintiff first responds that consideration of an exculpatory clause "is generally an

17   affirmative defense that is inappropriate to consider at [the motion to dismiss] stage." (Doc.

18   15 at 22.) Plaintiff also argues that the exculpatory clause does not apply because the

19   Director Defendants derived an improper personal benefit and because Defendants Wu and

20   Wheeler were officers of Opendoor in addition to being directors. Finally, she asserts that

21   the Complaint alleges non-exculpated conduct.

22       Plaintiff cites no authority establishing that courts may not consider an exculpatory

23   clause at the motion to dismiss stage. (*See* Doc. 15 at 22-23.) She references *In re Galena*

24   *Biopharma, Inc. Derivative Litigation*, 83 F. Supp. 3d 1047 (D. Or. 2015), but the court in

25   that case declined to reach the issue because, even assuming that it could consider the

26

27
_____

[8] Both parties agree that the Court may take judicial notice of Opendoor's certificate of
incorporation. (Doc. 14 at 9; Doc. 17 at 2; Doc. 18 at 4 n.2.) The Court therefore does so.
But because the Court's analysis does not require reference to any of the other proffered
exhibits, the Court otherwise will deny as moot the parties' requests for judicial notice and
incorporation by reference.

28

exculpatory clause, it found that the plaintiffs had "alleged sufficient facts stating a non-exculpated claim against" the defendants. *Id.* at 1060. And contrary to Plaintiff's position, Delaware courts often consider the impact of an exculpatory clause on demand futility at the motion to dismiss stage. *See, e.g.*, *Behrmann v. Brandt*, C.A. No. 19-772-RGA, 2020 WL 4432536, at *4 (Del. Ch. July 31, 2020); *In re GoPro, Inc.*, C.A. No. 2018-0784-JRS, 2020 WL 2036602, at *12 (Del. Ch. Apr. 28, 2020); *Owens ex rel. Esperion Therapeutics, Inc. v. Mayleben*, C.A. No. 12985-VCS, 2020 WL 748023, at *7 (Del. Ch. Feb. 13, 2020). The Court will likewise do so here.

Plaintiff correctly notes that an exculpatory clause "shall not eliminate or limit the liability of . . . [a] director or officer for any transaction from which the director or officer derived an improper personal benefit." Del. Code Ann. tit. 8, § 102(b)(7)(iv) (2024). She has not, however, alleged that any Director Defendant received an improper personal benefit. She provides no specific argument otherwise. (*See* Doc. 15 at 22-23; Doc. 16 at 21-23.)

Plaintiff is also correct that Opendoor's exculpatory clause applies only to directors, providing no protection to officers. Del. Code Ann. tit. 8, § 102(b)(7)(v) (2024). She alleges that Defendants Wu and Wheeler were officers and directors. (Doc. 1 ¶¶ 52, 64.) Thus, any action allegedly taken by Defendants Wu and Wheeler as officers is not protected. *See* Del. Code Ann. tit. 8, § 102(b)(7)(v) (2024). But Plaintiff "has failed to highlight any specific actions [that these Defendants] undertook as [] officer[s] (as distinct from actions as a director)." *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1288 (1994). This argument, therefore, also fails.

Finally, Plaintiff has not alleged non-exculpated conduct as to any of the Director Defendants. Instead, responding to the Motion to Dismiss, she states in conclusory terms that "the Complaint concerns more than mere duty of care violations," but does not provide any additional reasoning. (Doc. 15 at 22-23; *see also* Doc. 16 at 21-23.) Elsewhere, Plaintiff appears to argue that the Individual Defendants committed non-exculpated conduct by failing to perform due diligence prior to the merger and correct alleged omissions in the

merger proxy statement that they "should have known" rendered the statement misleading. (Doc. 16 at 22-23.) But it is unclear to what extent these arguments apply to the Director Defendants, if at all. And even if they do, Plaintiff cites no portion of the Complaint that provides "particularized allegations" supporting the inference that the Director Defendants acted "in bad faith, knowingly, or intentionally." *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 132 (Del. Ch. 2009) (cleaned up).

Accordingly, the Court finds that Plaintiff has not alleged that any of the Director Defendants face a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand.

### 3.   Lack of Independence

Defendants finally argue that Plaintiff has failed to allege that any of the Director Defendants "lack[] independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand." *Zuckerberg*, 262 A.3d at 1059. They contend that Plaintiff has not pleaded "any particularized facts" demonstrating a lack of independence from anyone. (Doc. 11 at 23; *see also* Doc. 22 at 14-15.)

Plaintiff responds by arguing that Defendants Wu and Wheeler are beholden to Defendants Solomon and Bain because those Defendants sat on Opendoor's compensation committee and made Defendants Wu and Wheeler's immense compensation possible. She also contends that Defendant Bain is beholden to Defendants Palihapitiya, Osborn, and Trieu because he "received millions of dollars for aiding [them] in various SPAC transactions over recent years." (Doc. 15 at 24.) She makes no specific arguments regarding the other Director Defendants, stating only that "[t]he Complaint . . . sufficiently demonstrates that each of the Director Defendants . . . is interested and not independent." (*Id.* at 23.)

Plaintiff's arguments concerning Defendants Wu and Wheeler fail because, as discussed *supra*, she has not alleged that Defendants Solomon or Bain "received a material

personal benefit from the alleged misconduct that would be the subject of the litigation demand or . . . would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand." *Zuckerberg*, 262 A.3d at 1059.

As to Defendant Bain's purported lack of independence, the Court first notes that it is unclear whether, under Delaware law, Plaintiff may allege demand futility by demonstrating that Defendant Bain lacks independence from non-directors such as Defendants Palihapitiya, Osborn, and Trieu. The *Zuckerberg* court, in discussing the third prong of the demand futility test, stated that "to show a lack of independence, a derivative complaint must plead with particularity facts creating a reasonable doubt that a director is . . . so beholden to an interested *director* that his or her discretion would be sterilized." *Id.* at 1060 (cleaned up) (emphasis added).

Regardless, and even assuming that Defendants Palihapitiya, Osborn, and Trieu received material personal benefits or face a substantial likelihood of liability as a result of the alleged misconduct, Plaintiff fails to allege the requisite particular facts to create reasonable doubt that Defendant Bain's discretion has been sterilized by his dependence upon those Defendants. The Complaint vaguely alleges that Defendant Bain is a "long-time business partner[]" of Defendants Palihapitiya and Osborne and that he received "over $10 million for his role in the . . . merger" of another company affiliated with Defendant Palihapitiya. (Doc. 1 ¶ 109 n.5.) But Plaintiff fails to specify anything about Defendant Bain's previous business engagements with Defendants Palihapitiya, Osborn, and Trieu, how precisely those engagements led to financial benefits in the past, and how precisely they led to any alleged benefits at issue here. *Compare In re Trados Inc. Shareholder Litig.*, 73 A.3d 17, 54-55 (Del. 2013). Thus, her allegations are insufficient.

Because Plaintiff has failed to allege demand futility as to any Director Defendant, the Court finds that Plaintiff's failure to make a pre-suit demand is not excused. As a result, the Complaint must be dismissed. *See Zuckerberg*, 262 A.3d at 1040.

**D.    Violation of Section 14(a) and Rule 14a-9**

Even if Plaintiff had sufficiently alleged demand futility, her claim would fail

1    because she has not adequately alleged a claim under § 14(a) and Rule 14a-9.

2          Defendants argue that the Complaint employs impermissible puzzle pleading. They

3    assert that "Plaintiff has copied large portions of the proxy statements into the Complaint

4    in the form of block quotes, without identifying any specific statement alleged to be false

5    or misleading and without linking any alleged material omission of information to any

6    specific statement." (Doc. 13 at 14 (cleaned up).) Plaintiff does not directly address

7    Defendants' argument, except to say that "the Complaint details specific reasons why the

8    statements made in the merger proxy—at the time they were made—created an impression

9    that differed from reality," and repeat general allegations regarding Defendants' alleged

10    misconduct. (Doc. 16 at 18.)

11          When a complaint places "the burden on the reader to sort out the statements and

12    match them with the corresponding adverse facts to solve the 'puzzle' of interpreting a

13    plaintiff's claims," it violates the PSLRA and Rule 8(a), Fed. R. Civ. P. *Wenger v. Lumisys,*

14    *Inc.*, 2 F. Supp. 2d 1231, 1244 (N.D. Cal. 1998) (cleaned up). Thus, "courts may dismiss

15    cases for puzzle pleading where the complaint recites lengthy statements attributed to the

16    defendants followed by a generalized list of reasons that the statements may have been

17    false or misleading or a generalized list of omissions that were required to make the

18    statements not misleading." *Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1274

19    (N.D. Cal. 2019) (cleaned up)).

20          The Court finds that Plaintiff has indeed engaged in impermissible puzzle pleading.

21    The 124-page, 295 paragraph Complaint solely relies upon block quotes with no indication

22    as to what specific statement contained therein is false or misleading. (*See, e.g.*, Doc.

23    1 ¶¶ 186-202, 213-19, 231-37.) While Plaintiff includes general statements about why

24    certain block quotes are false or misleading, they are vague and insufficient to identify

25    what portion of the quotes she may be referring to and how those portions are false or

26    misleading. For example, she asserts that two block quotes are false and misleading

27    because they "mispresented [SCH's] due diligence efforts of Legacy Opendoor by

28    exaggerating that it had conducted proper due diligence of Legacy Opendoor prior to the

1    completion of the merger." (*Id.* ¶ 195.) But it is not clear what portions of the quotes do

2    this, or how, precisely, they give the impression that SCH had done more due diligence

3    than it actually had. The vague explanation provided is insufficient to satisfy the PSLRA's

4    exacting pleading standard.

5         As another example, Plaintiff alleges that two other lengthy block quotes in the

6    merger proxy statement are false or misleading because they "mispresented the value of

7    SCH shares leading up to the merger" and "failed to disclose that the entire SCH board had

8    deep financial ties to the founder shares." (*Id.* ¶¶ 196, 198 (cleaned up).) But Plaintiff again

9    fails to provide the sort of specific allegations required by the PSLRA and Rule 8(a). She

10   does not specifically explain how any portion of the 263-word block quote concerning

11   Opendoor's stock calculation is false or misleading, but generally appears to disagree with

12   its conclusion. Nor does she identify any specific portion of the block quotes (totaling 595

13   words altogether) made false or misleading by the absence of information that she says

14   should have been included.

15        Plaintiff's allegations with respect to the 2021 and 2022 proxy statements fare no

16   better. She alleges that block quotes contained in both proxy statements are false and

17   misleading because they led investors to believe that the Individual Defendants followed

18   Opendoor's code of conduct and performed their role in risk oversight, and because the

19   statements failed to disclose certain information regarding Opendoor's technology,

20   potential unprofitability, past business practices, and merger. (*Id.* ¶¶ 215-218, 233-36.) But

21   she again fails to identify the exact portions of the quotes that do any of these things and

22   explain—in detail and with specificity—how they do so. Plaintiff's conclusory

23   explanations thus lack the detail required by the PSLRA and Rule 8(a).

24        The Court, therefore, finds that Plaintiff has not adequately pleaded her § 14(a)

25   claim for violation of Rule 14a-9 and will dismiss the Complaint. *See Xiaojiao Lu*, 417 F.

26   Supp. 3d at 1274.

27   **IV.   LEAVE TO AMEND**

28        Plaintiff requests leave to amend her Complaint. (Doc. 15 at 24 n.31; Doc. 16 at 24

n.27.) Under Rule 15(a), Fed. R. Civ. P., when a court grants dismissal, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 [is] to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up). Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, be futile, or if the party moving for leave to amend has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

Plaintiff did not make a pre-suit demand on Opendoor's board of directors, and no amendment can change that. But Plaintiff may be able to plead demand futility with facts sufficient to satisfy Rule 23.1, Fed. R. Civ. P. Similarly, Plaintiff may be able to correct the deficiencies in her § 14(a) and Rule 14a-9 allegations. Indeed, when questioned at oral argument, Plaintiff indicated that she could bolster her allegations if given leave to amend. The Court, therefore, will give her one additional attempt.

**V.      CONCLUSION**

Accordingly,

**IT IS ORDERED** that Nominal Defendant Opendoor Technologies Inc.'s Motion to Dismiss and Memorandum of Points and Authorities in Support Thereof (Doc. 11) is **granted** as stated in this Order.

**IT IS FURTHER ORDERED** that the Individual Defendants' and Sponsor's Motion to Dismiss the Consolidated Amended Complaint and Memorandum of Points and Authorities in Support Thereof (Doc. 13) is **granted** as stated in this Order.

**IT IS FURTHER ORDERED** that Defendants' Notice of Incorporation by Reference and Request for Judicial Notice (Doc. 14) and Plaintiff's Request for Judicial Notice (Doc. 17) are **granted in part** as stated in this Order and otherwise **denied as moot**.

. . .

. . .

. . .

**IT IS FINALLY ORDERED** that Plaintiff's Complaint (Doc. 1) is **dismissed with leave to amend**. Plaintiff may file an Amended Complaint no later than 30 days from the date of this Order.

Dated this 13th day of August, 2024.

Michael T. Liburdi
United States District Judge